IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | |
|---|---|
| MARY C. BARRETT, ) | |
|       Plaintiff ) | |
| v. ) | No. 2:06-cv-148 |
| JO ANNE B. BARNHART, ) Commissioner of the Social Security Administration, ) | |
|       Defendant ) | |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons that follow, plaintiff's motion for judgment on the pleadings [Court File #9] will be denied; defendant's motion for summary judgment [Court File #11] will be granted; and the final decision of the defendant Commissioner affirmed.

I.

*Factual Background*

Plaintiff Mary C. Barrett is 58 years old with a date of birth of February 7, 1949. She has a high school education and past relevant work experience as a machine operator, a job which was unskilled vocationally and required light exertion. She claims that she has been disabled due to fibromyalgia and depression since March 5, 2003, the date upon which she last worked.

The medical evidence reflects that the plaintiff began receiving psychological treatment from Dr. Kristie Nies, a neuropsychologist, beginning in October 2000. She continued to see Dr. Nies until March 2001, when Dr. Nies reported that plaintiff had significantly improved, most of the treatment goals had been met, and they agreed to terminate therapy.

Dr. William Bell evaluated the plaintiff in May 2001, almost two years prior to her alleged onset of disability. He diagnosed fibromyalgia and noted that it was a pain syndrome, not a disease, and did not cause destruction or damage to tissues. He further noted that he did not think work was detrimental to the plaintiff and a restriction of working 40 hours per week was reasonable. Plaintiff saw Dr. Bell again in July and September 2001, at which time he returned her to the care of her

family physician, Dr. J. Paul Singh. Dr. Singh has treated the plaintiff for a variety of ailments, apparently beginning in June 2002.

Plaintiff took a voluntary layoff from work in March 2003 and began drawing unemployment insurance, thereby certifying that she was able and willing to work. In January 2005, plaintiff was evaluated by Beth Ballard, a psychological examiner. After interview and examination, Ms. Ballard diagnosed an anxiety disorder with depressed and anxious features. She concluded that the plaintiff was not limited in her ability to understand or remember work-like procedures and simple or detailed instructions. She further felt that the plaintiff was only slightly limited in her ability to sustain concentration and persistence at an adequate level due to her depressive symptomatology. According to Ms. Ballard, the plaintiff was not limited in her ability to maintain age-appropriate social behavior and the basic standards of neatness and cleanliness. Plaintiff was not limited in her ability to respond appropriately to changes in the work setting and to be aware of normal hazards and take precautions.

Plaintiff was examined and evaluated by Dr. Samuel Breeding, the Commissioner's consultative physician, in February 2005. Upon examination, he diagnosed fibromyalgia and a history of depression. He noted that the plaintiff had taken a voluntary layoff from work and felt much better since she was not working.

3

He concluded that the plaintiff could lift 25 pounds occasionally, sit for six to eight hours in an eight-hour day, and stand for four to six hours in an eight-hour day, but should be allowed to sit or stand as needed for comfort. He further opined that the plaintiff might have difficulty doing sustained physical activity.

Dr. Warner, a state agency physician, reviewed the record evidence in February 2005 and concluded that the plaintiff could perform medium exertional work. Further, Dr. Welch reviewed the record evidence for the state agency in February 2005 and concluded that the plaintiff did not have a severe mental impairment.

Plaintiff testified at her hearing before the administrative law judge (ALJ) regarding her condition. She admitted that she had taken a voluntary layoff from work, but indicated that her work was very painful for her and that she had musculo-skeletal pain; that she has pain in her hands and feet, and that when she is asked to describe her pain she says "it's like a chronic case of the flu." She testified that she has pain and fatigue as well as some depression. She is able to fix meals for her daughter and help her bathe. She further testified that she had a lot of pain in her hands and feet, but that she was a lot better since she had quit work.

A vocational expert, Donna Bardsley, also appeared and testified. She described the plaintiff's prior work as being light and unskilled. She was asked to assume an individual of the plaintiff's height, weight, education and work background who had the residual functional capacity for medium activities and had a mental impairment consistent with the assessment prepared by Ms. Ballard. Based on this assumption, Ms. Bardsley testified that such a person could be a cashier, sales clerk, hand packer, sorter, assembler, inspector, stock and inventory clerk, with about 10,000 of those jobs in the region and 11 million in the nation. However, Ms. Bardsley further opined that if the plaintiff had the limitation as described in her testimony, she could not work, and that if she required a sit/stand option, she could not do her prior work.

The ALJ made the following relevant findings:

. . .

    2.    The claimant has not engaged in substantial gainful activity since March 5, 2003.

    3.    The medical evidence establishes that the claimant has a severe impairment based on the diagnosis of fibromyalgia, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

    4.    The claimant's allegations of disabling pain and other symptoms are not credible and are not supported by documentary evidence.

5

> 5. The claimant has the residual functional capacity to perform work-related activities except for work involving heavy exertion. There are no non-exertional limitations (20 CFR § 404.1545).
>
> 6. The claimant's past relevant work as a machine operator did not require the performance of work-related activities precluded by the above limitation (20 CFR § 404.1565).
>
> 7. The claimant's impairment does not prevent the claimant from performing her past relevant work.
>
> . . .

R14.

## II.

### *Standard of Review*

"The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. ..." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

The Court also reviews the ALJ's decision to determine "whether the [Commissioner] employed the proper legal standards in reaching her conclusion." *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). When the ALJ's findings are not supported by substantial evidence, or if the ALJ has committed legal error, the reviewing court shall reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or ... the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health & Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

### III.
### *Application of the Five-Step Evaluation Process*

Disability is evaluated pursuant to a five-step analysis summarized as follows:

    (1)    If claimant is capable of doing substantial gainful activity, she is not disabled.

    (2)    If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If claimant is not doing substantial gainful activity and is suffering from a severe impairment that lasted or is expected to last for a continuous period of at least 12 months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> (4) If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5) Even if claimant's impairment does not prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 CFR § 404.1520). Plaintiff bears the burden of proof during the first four steps. *Walters*, at 529. The burden shifts to the Commissioner at step five. *See id.*

## IV.

### *Analysis*

The ALJ concluded his inquiry at step four of the evaluation process, concluding that, although the plaintiff has a severe impairment based on diagnosis of fibromyalgia, that impairment did not prevent her from performing her past relevant work. The court finds that this determination is supported by substantial evidence in the record.

Although Dr. Singh treated the plaintiff for a variety of ailments beginning in June 2002, he did not recommend any functional restrictions or suggest that she stop working. In fact, a June 2003 progress note indicates that the plaintiff "quit

8

work." Prior to leaving the job, plaintiff's sole restriction was a 40-hour work week, which constitutes full-time work. Even plaintiff's own treating physician's progress notes do not support her claim that she became disabled in March 2003.

The ALJ also considered the plaintiff's daily activities which showed that she was married and lived with her disabled husband and her adult daughter, who was mentally retarded. Plaintiff provided care for her daughter, fixing her meals, helping her dress, and assisting with her personal hygiene. Plaintiff was able to drive a car. She prepared meals, performed basic cleaning, did laundry, sometimes mowed the lawn with a riding mower, and went grocery shopping on a weekly basis. She read, watched television, talked with friends on the telephone, took her daughter to the park and to McDonald's, visited her sister, attended a weight-loss program, went out to eat with her husband, and went to church occasionally.

The ALJ noted that plaintiff did not require strong prescription pain medication for symptomatic relief, and that neither the treating physician nor consultative examiner noted any significant abnormality on clinical examination. Further, plaintiff testified that she voluntarily left her job and began collecting unemployment benefits thereby certifying that she was willing and able to work in order to collect unemployment benefits. That certification also detracts from the plaintiff's credibility regarding her claims of disabling pain. *See Barrett v. Shalala*,

38 F.3d 1019, 1024 (8th Cir. 1994) (Claimant's signature on document stating that she was capable of working and seeking work in order to be eligible for unemployment benefits was clearly inconsistent with claim of disability.).

With respect to plaintiff's non-exertional limitation resulting from her depression, neither the clinical psychologist who had previously treated the plaintiff, Dr. Kristie J. Nies, or the psychologist who evaluated her in January 2005, Beth Ballard, indicated that plaintiff was limited in her ability to perform work-related activities because of depression or anxiety.

Accordingly, the ALJ's opinion that plaintiff was capable of performing work at the medium exertional level is supported by substantial evidence in the record. If someone can do medium work, she can also do sedentary or light work. 20 CFR § 404.1567(c). Therefore, since plaintiff could perform medium exertional activities, she could also perform her past relevant work which only required light exertional activities.

V.

***Plaintiff's Assignments of Error***

The plaintiff raises the following three assignments of error: (1) that the ALJ failed to properly evaluate her fibromyalgia; (2) that the opinion of Dr. Breeding,

the consultative physician, conclusively showed that the plaintiff was not capable of returning to her former work; and (3) that the ALJ failed to give proper consideration to plaintiff's subjective allegations of pain. The court will address each of these arguments in turn.

Although in some cases fibromyalgia could constitute a disabling impairment in spite of the difficulty in diagnosing the disease, *see Preston v. Secretary of Health & Human Services*, 854 F.2d 815 (6th Cir. 1988), not every diagnosis of fibromyalgia requires a finding of disability. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that she received a diagnosis of fibromyalgia ... since fibromyalgia is not always (indeed, not usually) disabling."); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working, ... but most do not and the question is whether Sarchet is one of the minority."). In this case, the ALJ took into consideration the diagnosis of fibromyalgia, the limitations on the plaintiff noted by the examining and consulting physicians, and the plaintiff's testimony at the hearing and found that, in spite of the fibromyalgia, plaintiff was capable of working at the medium exertional level. His conclusion is further supported by plaintiff's certification that she was capable of returning to work after her alleged onset date when she filed for unemployment benefits and by the absence of prescription pain medications to alleviate her alleged disabling pain.

With respect to the opinion of the consultative physician Dr. Breeding, the ALJ was not required to automatically accept the conclusion that plaintiff could only work with a "sit/stand" option. Dr. Breeding's opinion is not supported by objective medical findings. In fact, Dr. Breeding's objective medical findings seem to not impose a "sit/stand" option. For example, Dr. Breeding observes that the plaintiff had a normal range of motion of all major joints and full muscle strength. Moreover, although Dr. Singh treated the plaintiff for a variety of ailments since June 2002, he never recommended any functional restrictions or suggest that the plaintiff stop working. Accordingly, it was not error for the ALJ to reject the conclusory opinion of Dr. Breeding that a "sit/stand" option would be necessary for the plaintiff to continue working.

Finally, with respect to subjective allegations of pain, the ALJ is required to consider a number of factors including: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain or symptoms; (2) participating and aggravating factors (*e.g.*, movement, activity, environmental conditions); (3) type, dosage, effectiveness and adverse side-effects of any medications; (4) treatment other than medication, for relief; (5) functional restrictions; and (6) the claimant's daily activities. 20 CFR § 404.1529; SSR 96-7p. Here, the ALJ considered the plaintiff's daily activities, the lack of functional restrictions placed on her by her treating physicians, and lack of prescription pain medications prescribed. He also

considered plaintiff's credibility. The ALJ's credibility determinations are entitled to considerable deference. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 34 (6th Cir. 1993). There is substantial evidence in the record to support the ALJ's conclusion that plaintiff's allegations of disabling pain are not credible.

VI.

### *Conclusion*

In light of the foregoing, plaintiff's motion for judgment on the pleadings [Court File #9] will be denied; defendant's motion for summary judgment [Court File #11] will be granted; and the final decision of the defendant Commissioner will be affirmed.

Enter judgment accordingly.

                                                *s/ James H. Jarvis*
                                         UNITED STATES DISTRICT JUDGE